1
2
3
4
5
6
7                        UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   DIMICOE C. WHITFIELD,                          No.  2:13-cv-01177 CKD

11              Plaintiff,

12        v.                                        ORDER

13   CAROLYN W. COLVIN,
     Acting Commissioner of Social Security,
14
                Defendant.
15

16

17         Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title

19   XVI of the Social Security Act ("Act").  For the reasons discussed below, the court will deny

20   plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for

21   summary judgment.

22   BACKGROUND

23         Plaintiff, born February 2, 1972, applied for SSI benefits on February 12, 2010, alleging

24   disability beginning September 1, 2008.[1]  Administrative Transcript ("AT") 14, 146, 169.

25   ――――――――――――――
     [1]       The ALJ noted that plaintiff filed his application on February 5, 2012, but there is no basis
26   for that date in the record.  AT 14.  Also, plaintiff's Application Summary for Supplemental
     Security Income lists January 1, 1985 as the date plaintiff's disability began.  AT 146.  However,
27   the ALJ's opinion and a Disability Report indicate that plaintiff's alleged onset date is September
     1, 2008, which corresponds to the date plaintiff stopped working, as listed in a different Disability
28   Report in the record.  AT 14, 169, 174.

                                                  1

Plaintiff alleged he was unable to work due to learning disabilities, Post-Traumatic Stress Disorder ("PTSD"), Attention Deficit Disorder ("ADD"), depression, arthritis, sleep apnea, and back, knee, and ankle pain.  AT 174, 202-06.  In a decision dated January 25, 2012, the ALJ determined that plaintiff was not disabled.[2]  AT 13-24**.**  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1.      The claimant has not engaged in substantial gainful activity since February 5, 2010, the application date.
>
> 2.      The claimant has the following severe impairments: arthritis, hernia, diverticulitis, depressive disorder, cognitive disorder and history of Post-Traumatic Stress Disorder (PTSD).

---

[2]      Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76,  416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he requires simple unskilled work that is performed without frequent public contact.

5.      The claimant is unable to perform any past relevant work.

6.      The claimant was born on February 2, 1972 and was 38 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7.      The claimant has an 11th grade limited education and is able to communicate in English.

8.      Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

9.      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10.     The claimant has not been under a disability, as defined in the Social Security Act, since February 5, 2010, the date the application was filed.

AT 15-23.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly assessed plaintiff's mental and physical impairments in making his residual functional capacity finding, which is not supported by substantial evidence; (2) the ALJ improperly failed to obtain evidence from a vocational expert; (3) the ALJ improperly discredited plaintiff's testimony; and, (4) the ALJ improperly failed to assess plaintiff's wife's written and oral testimony.  ECF No. 17-1, 13.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

1  evidence is more than a mere scintilla, but less than a preponderance.  <u>Connett v. Barnhart</u>, 340

2  F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

3  mind might accept as adequate to support a conclusion."  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th

4  Cir. 2007), quoting <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is

5  responsible for determining credibility, resolving conflicts in medical testimony, and resolving

6  ambiguities."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

7  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

8  rational interpretation."  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008).

9       The record as a whole must be considered, <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th

10  Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

11  conclusion weighed.  <u>See</u> <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

12  affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  <u>Id.</u>; <u>see</u>

13  <u>also</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

14  administrative findings, or if there is conflicting evidence supporting a finding of either disability

15  or nondisability, the finding of the ALJ is conclusive, <u>see</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226,

16  1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

17  weighing the evidence.  <u>See</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

18  <u>ANALYSIS</u>

19  A. <u>Residual Functional Capacity</u>

20       Plaintiff claims that the ALJ erred in assessing plaintiff's mental and physical residual

21  functional capacity ("RFC") because the findings are not based on substantial evidence.  ECF No.

22  17-1, 14.  The ALJ found that plaintiff had the RFC to perform light work, except he requires

23  simple, unskilled work that is performed without frequent public contact.  AT 17.  Plaintiff

24  alleges that the ALJ's RFC determination is not based on substantial evidence because he failed

25  to include all necessary exertional and non-exertional functional limitations resulting from

26  plaintiff's mental and physical impairments.  ECF No. 17-1, 15.  Social Security Ruling ("SSR")

27  96-8p sets forth the policy interpretation of the Commissioner for assessing RFC.  SSR 96-8p.

28  RFC is what a person "can still do despite [the individual's] limitations."  20 C.F.R. §§

1    404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d 1082, 1085 (9th Cir.

2    1985) (RFC reflects current "physical and mental capabilities").  An individual's RFC is "based

3    on all the relevant evidence in [the individual's] case record."  Id.

4         1. Mental Impairments

5         Plaintiff contends that the ALJ's mental RFC is not based on substantial evidence

6    because the finding does not accurately encompass, reflect, or interpret the opinions of Drs. Sid

7    Cormier or H. Amado, and because the limitation to simple unskilled work does not accurately

8    reflect all limitations caused by moderate difficulties with concentration, persistence, or pace.

9    ECF No. 17-1, 16-22.  The ALJ found that plaintiff suffered from the following severe mental

10   impairments: depressive disorder, cognitive disorder, and history PTSD.  AT 15.  In assessing

11   plaintiff's mental impairments, the ALJ discussed the opinions of Drs. Cormier, Anita Blossom,

12   and Amado as well as records from Tehama County.  AT 20-21.

13        The ALJ thoroughly addressed the opinion of Dr. Cormier, a consultative examining

14   psychologist.  AT 20, 248-53.  Dr. Cormier indicated that plaintiff: was marginally alert; was

15   oriented to person, place, time, and situation; had patchy sensorium; had slow and lethargic

16   thought processes; had a moderately depressed mood; had below average abstract thinking; did

17   not have a very good grasp of concepts or behavioral consequences; could successfully recall six

18   digits forward, four digits backwards, and serial 3's; had mildly impaired judgment; had a

19   borderline vocabulary; and had an ability to conceptualize suggesting below average to borderline

20   intellectual functioning.  The ALJ also noted Dr. Cormier's discussion of plaintiff's test scores

21   which "most possibly reflected a significant underestimation of [plaintiff's] true levels of

22   cognitive functioning due to fatigue or a lack of effort."  Dr. Cormier gave plaintiff a GAF of 60,[3]

23   which the ALJ noted is indicative of an individual who has moderate limitations in social and

24   occupational functioning.  The ALJ noted that Dr. Cormier assessed moderate impairments in the

---

25   [3]      GAF stands for Global Assessment of Functioning, which is a scale reflecting the
26   "psychological, social, and occupational functioning on a hypothetical continuum of mental
     health-illness."  Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000)
27   ("DSM IV-TR").  A 51-60 rating indicates moderate symptoms  (e.g., flat affect and
     circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or
28   school functioning  (e.g., few friends, conflicts with peers or co-workers).

ability to perform in various areas of mental functioning, including: performing simple and repetitive tasks, maintaining regular attendance, performing on a consistent basis, completing a normal workday or workweek, interacting with coworkers and the general public, and maintaining pace and persistence.  Dr. Cormier noted possibly more impairment as to accepting and remembering instructions from supervisors.  However, there was no suggestion of impairment in the ability to deal with typical stresses encountered in competitive work situations.  Dr. Cormier also opined that plaintiff was cognitively capable of adjusting to simple, but not complex changes in work situations and performing, basically, all activities of daily living.  Finally, the ALJ discussed that Dr. Cormier found that plaintiff's depressive or cognitive limitations had only recently been addressed, that plaintiff was never seen to be a psychological or behavioral safety concern in work settings, and that he expected plaintiff to have additional improvement with psychiatric services.  The ALJ found that this opinion was supported by objective evidence and consistent with the body of evidence.

The ALJ then discussed treatment records from Tehama County where plaintiff was treated for emotional difficulties and diagnosed with PTSD related to sexual abuse as a child.  AT 20-21, 299-322.  The ALJ discussed Dr. Blossom's conclusions that plaintiff is permanently disabled by anxiety, depression, PTSD, and possible personality disorder, which cause a lack of focus or routine, constant pleasure-seeking behavior, and irresponsibility.  The ALJ found that that this opinion was not supported by objective findings, that it drew inferences from plaintiff's history, and that the symptoms caused by the supposed disabling impairments would not necessarily negate all ability to perform work activity.

Lastly, the ALJ discussed the opinion of state agency reviewing psychiatrist Dr. Amado, who reviewed the record and found that plaintiff had moderate impairments in the ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; work in coordination with or proximity to others without distraction; complete a normal workday/workweek without interruption from psychologically based symptoms; interact appropriately with the public; and respond appropriately to changes in work settings.  AT 21, 279-281.  The ALJ found that this

1    opinion was consistent with the record based on the understanding that Dr. Amado is a non-

2    examining state agency physician and the SSA definition of a moderate impairment is that there is

3    more than a slight limitation in an area, but that such an individual is still able to function

4    satisfactorily.

5            As it pertains to the ALJ's assessment of these opinions, plaintiff does not argue that the

6    ALJ failed to account for aspects of these opinions that are in the medical record.  Instead,

7    plaintiff asserts that the credited opinions of Drs. Cormier and Amado support greater restriction

8    findings as to work, activities of daily living, social functioning, and in concentration, persistence,

9    or pace.  ECF No. 17-1, 17.  Plaintiff contends that there is nothing in the RFC finding that

10   reflects the deficits set forth in the opinions and that the ALJ provided no explanation as to why

11   they were excluded.  Id. at 18-19.

12           Defendant stresses that the plaintiff's RFC represents the most he can do despite his

13   limitations and that the ALJ's interpretation of the medical record was reasonable because Drs.

14   Cormier and Amado opined that plaintiff could perform simple work and interact appropriately

15   with the public, to a moderate but satisfactory degree.  ECF No. 18, 8-10.

16           Defendant's argument is persuasive.  Dr. Adamo stated that plaintiff "would not be

17   precluded from unskilled work activity in a low-stress setting away from the general public,"

18   which coincides with the ALJ's RFC finding.  AT 281.  Thus, plaintiff's argument that Dr.

19   Adamo's restrictions were inadequately reflected in the ALJ's RFC finding has no merit.

20   Furthermore, to the extent that any mental impairment discussed by Dr. Cormier was not fully

21   reflected in the ALJ's RFC finding, its inclusion was unwarranted under SSR 96-8p, which states

22   that RFC is the most a person can do despite the individual's limitations.  Dr. Cormier stated that

23   the validity of plaintiff's test scores were in question due to fatigue and lack of effort, that

24   plaintiff's newly addressed impairments and limitations were likely to only moderately impair his

25   ability to perform simple and repetitive tasks, and that his status is suspected to improve after

26   receiving outpatient psychiatric and psychological services.  AT 250, 252-53.  Thus, contrary to

27   plaintiff's assertions, there is substantial evidence from both opinions supporting the ALJ's

28   mental RFC finding.

1   As it pertains to the limitation to simple unskilled work, plaintiff argues that the ALJ did

2   not adequately provide specific, detailed functional restrictions that would be appropriate for a

3   finding of moderate difficulties with concentration, persistence, or pace.  ECF No. 17-1, 20-22.

4   However, the Ninth Circuit has found that an RFC finding that a plaintiff has the capacity to

5   perform "simple, unskilled work" is proper for a plaintiff having "mild restrictions in activities of

6   daily living and social functioning, moderate difficulties with regard to concentration, persistence

7   or pace, and no episodes of decomposition."  See Yasuda v. Astrue, 2010 WL 3809850 (D. Ariz

8   2010), aff'd Yasuda v. Comm'r of Soc. Sec. Admin., 473 Fed.Appx. 787 (9th Cir. 2012).

9   Accordingly, the ALJ did not err in assessing plaintiff's mental RFC.

10   2.  Physical Impairments

11   Plaintiff contends that the ALJ failed to include all exertional and non-exertional

12   limitations that resulted from plaintiff's physical impairments.  ECF No. 17-1, 22.  Plaintiff

13   asserts that there are no medical opinions or evidence supporting the ALJ's physical RFC finding

14   that plaintiff is limited to "light work."  Id. at 23.  Plaintiff also claims that the ALJ failed to

15   account for his obesity.  Id. at 19.  The ALJ found that plaintiff suffered from the following

16   severe physical impairments: arthritis, hernia, and diverticulitis.  AT 15.  In assessing plaintiff's

17   physical impairments, the ALJ discussed the objective findings in the record and the opinions of

18   Drs. Brian Dossey, Muhammad Iqbai, and J. Becker.  AT 19-21.

19   As the ALJ explained, objective findings of physical difficulties were sparse, and the

20   evidence that did exist showed unremarkable findings.  AR 19.  The ALJ found that in February

21   of 2010, plaintiff had a lumbar radiological study showing no fracture, subluxation, or disc

22   narrowing and only mild facet arthritis at L4-5 and L5-S1.  He also discussed Dr. Iqbal's

23   examination of plaintiff in which he noted: history of hernia, low back pain, and paraspinal spasm

24   and tenderness; no vertebral spine or S1 joint tenderness; negative strait leg raising test

25   bilaterally; normal motor system bilaterally and sensory examination of lower extremities; normal

26   and symmetrical reflexes bilaterally; a small, reducible, and mildly tender umbilical hernia; and,

27   normal gait and extremities without cyanosis or edema.  Plaintiff was referred for hernia surgery,

28   which was performed without incident in July 2010.  The ALJ noted that in November of 2010,

1    plaintiff complained of heavy snoring and was encouraged to stop snoring and use a CPAP.  The

2    ALJ found that in February and April of 2011, plaintiff made complaints of continued left knee

3    pain caused by a football injury that occurred in 2010.  However, an x-ray and a subsequent MRI

4    showed no damage to or abnormalities with the knee.  The ALJ discussed that in May of 2011, an

5    abdominal CT scan showed symptoms suggesting mild diverticulitis, but no significant

6    pericolonic inflammation change, perforation, abscess, or other acute process.  In August of 2011,

7    a subsequent CT scan was taken but the results were normal.

8         The ALJ discussed Dr. Dossey's internal medical evaluation from December of 2011.  AR

9    19-20.  Dr. Dossey noted: no paravertebral muscle spasms or tenderness; normal cardiovascular

10   system; no edema or abdominal masses; plaintiff could toe and heel walk and did a ¾ squat

11   without complication; negative Romberg test and seated straight leg raising at 90 degrees; normal

12   range of motion; 5/5 motor strength in all extremities, including bilateral grip strength; intact

13   sensation and nerves; and, deep tendon reflexes were 2+ in the bilateral upper extremities.

14   Ultimately, Dr. Dossey concluded that plaintiff had no limitations physical, postural,

15   manipulative, or workplace environmental limitations.  The ALJ found that this opinion was

16   consistent with the record and well-supported by objective findings.

17        The ALJ also discussed state agency medical consultant Dr. Becker's medical source

18   statement, in which it was found that plaintiff had the ability to perform light work tasks that

19   involve occasional postural activities and that allow for the avoidance of concentrated exposure to

20   hazardous heights and machinery.  AT 21.  The ALJ found that this opinion was consistent with

21   the record based on the understanding that Dr. Becker is a non-examining state agency physician

22   and the SSA definition of a moderate impairment is that there is more than a slight limitation in

23   an area, but that such an individual is still able to function satisfactorily.

24        Plaintiff argues that the ALJ failed "to explain why there were discrepancies and

25   differences between Dr. Dossey's and Dr. Becker's opinions."  ECF No. 17-1, 24.  This view

26   highlights plaintiff's misunderstanding of the ALJ's role in making his RFC determination and

27   his duty to resolve conflicting medical evidence rather than to explain their contradictions.

28   /////

1    Plaintiff asserts that Dr. Dossey's opinion does not support the ALJ's physical RFC

2 finding because it does not take into account Dr. Dossey's note that plaintiff had a history of low

3 back pain, surgery on the right knee, left ankle pain, and sleep apnea.  ECF No. 17-1, 23.

4 Plaintiff also contends that, although the ALJ credited Dr. Dossey's opinion, such attribution

5 must be false because Dr. Dossey found "that plaintiff has no physical functional limitations

6 whatsoever" yet the ALJ's RFC finding was limited to "light work."  Id.  Based on these alleged

7 discrepancies, plaintiff claims that the ALJ erred by failing to explain why his physical RFC

8 finding did not include these opinions.

9    In regards to Dr. Becker's opinion, plaintiff argues that the postural and environmental

10 limitations he found were improperly omitted without explanation.  ECF No. 17-2, 24.  Again,

11 Dr. Becker found that plaintiff had the ability to perform light work tasks that involve occasional

12 postural activities, such as climbing, balancing, stooping, kneeling, crouching, and crawling, and

13 that allow for the avoidance of concentrated exposure to hazardous heights and machinery.

14 Plaintiff then claims that because Dr. Becker was a non-examining source, his opinion does not

15 constitute substantial evidence in support of the ALJ's findings.

16    As discussed above, RFC is what a person "can still do despite [the individual's]

17 limitations" and it is "based on all the relevant evidence in [the individual's] case record."  20

18 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia, 751 F.2d at 1085.  Thus, given the

19 lack of objective medical evidence in the record concerning plaintiff's history of low back pain,

20 surgery on the right knee, left ankle pain, and sleep apnea, and the fact that Dr. Dossey considered

21 this history in finding that plaintiff had "no physical functional limitations whatsoever," SSR 96-

22 8p warrants the exclusion of any limitations caused by these alleged impairments from the ALJ's

23 physical RFC finding.  Furthermore, a contradicted opinion of a treating or examining

24 professional may be rejected for "specific and legitimate" reasons that are supported by

25 substantial evidence.  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995).  Dr. Dossey's opinion

26 that plaintiff has "no physical limitations whatsoever" is contradicted by the postural and

27 environmental limitations assigned by Dr. Becker.  Thus, the ALJ properly rejected Dr. Dossey's

28 finding of no limitations because Dr. Becker's limitations represent a substantially supported,

1     specific, and legitimate reason for doing so.

2            The ALJ resolved the discrepancy between these opinions by finding that plaintiff had the

3     RFC to perform light work except he requires simple unskilled work.  In regards to light,

4     unskilled work, SSR 83-14 states that:

5                    The major difference between sedentary and light work is that most
               light jobs-- particularly those at the unskilled level of complexity--
6              require a person to be standing or walking most of the workday.
               Another important difference is that the frequent lifting or carrying
7              of objects weighing up to 10 pounds (which is required for the full
               range of light work) implies that the worker is able to do occasional
8              bending of the stooping type. . . .   [T]here are nonexertional
               limitations or restrictions which have very little or no effect on the
9              unskilled light occupational base. Examples are inability to ascend
               or descend scaffolding, poles, and ropes; inability to crawl on hands
10             and knees. . . .   Environmental restrictions, such as the need to
               avoid exposure to feathers, would also not significantly affect the
11             potential unskilled light occupational base. . . .   In jobs at the
               medium level of exertion, there is more likelihood than in light
12             work that such factors as the ability to ascend or descend ladders
               and scaffolding, kneel, and crawl will be a part of the work
13             requirement. However, limitations of these activities would not
               significantly affect the [medium] occupational base.
14

15    SSR 83-14 makes clear that the occupational base of light, unskilled work implies occasional

16    bending and stooping and it is not significantly affected by limitations in the ability to ascend or

17    descend ladders and scaffolding, kneel, and crawl.  Thus, the most restrictive limitations assigned

18    by medical opinions in the record are accounted for by the ALJ's physical RFC finding.  Plaintiff

19    points to no medical opinion in the record that assigns more restrictive limitations caused by

20    plaintiff's alleged physical impairments.

21            Lastly, citing to Social Security Ruling 02-1p, plaintiff asserts that the ALJ failed to

22    account for his obesity.  Obesity was eliminated from the Listing of Impairments (Listing 9.09)

23    because the Social Security Administration determined that the criteria in the Obesity Listing did

24    "not represent a degree of functional limitation that would prevent an individual from engaging in

25    any gainful activity."  SSR 02-1p.  Plaintiff bases his argument on the fact that Dr. Dossey

26    measured him at 5'11" and 240 pounds, which equates to a body mass index ("BMI") of 33.5.

27    Plaintiff's argument has absolutely no merit.

28    /////

1   First, plaintiff improperly asserts that a 33.5 BMI "qualifies as morbidly obese under SSR

2   02-1p." This is a patently false statement. SSR 02-1p states:

3        The Clinical Guidelines recognize three levels of obesity. Level I
         includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9.
4        Level III, termed "extreme" obesity and representing the greatest
         risk for developing obesity-related impairments, includes BMIs
5        greater than or equal to 40. These levels describe the extent of
         obesity, but they do not correlate with any specific degree of
6        functional loss.

7   There is no category of "morbid" obesity and plaintiff's BMI places him in the initial level of

8   obesity, which represents those with the least risk for developing obesity-related impairments

9   amongst the given categories. The only reference to "morbid obesity" in SSR 02-01p is

10  mentioned in explaining that descriptive terms for levels of obesity, such as "severe," "extreme,"

11  or "morbid," do not establish whether obesity is a "severe" impairment.

12   Plaintiff also claimed that SSR 02-1p required the ALJ to analyze the effect of obesity on

13  plaintiff's physical and mental impairments. Again, there is no merit to plaintiff's contention.

14  SSR 02-1p states:

15       When the evidence in a case does not include a diagnosis of
         obesity, but does include clinical notes or other medical records
16       showing consistently high body weight or BMI, we may ask a
         medical source to clarify whether the individual has obesity.
17       However, in most such cases we will use our judgment to establish
         the presence of obesity based on the medical findings and other
18       evidence in the case record.

19  Here, there was no diagnosis or mention of obesity in the medical record. In fact, as discussed

20  above, the medical findings and other evidence in the case record establish little to no physical

21  impairment. Thus, the ALJ did not err by using his judgment and not accounting for plaintiff's

22  obesity.

23   Accordingly, the ALJ did not err in assessing plaintiff's physical RFC.

24  B. Vocational Expert

25   Plaintiff claims that the ALJ erred in basing his step-five finding on the directives of the

26  Medical-Vocational Guidelines rather than retaining the services and testimony of a vocational

27  expert. ECF No. 17-1, 27-32. The ALJ found that there was substantial evidence that plaintiff

28  does not suffer from a sufficiently severe non-exertional limitation that would require the

assistance of a vocational expert.  AT 23.  The Medical-Vocational Guidelines ("the grids") are an administrative tool, in table form, used to resolve individual claims that fall into standardized patterns.  The grids categorize jobs by their physical-exertional requirements (e.g., sedentary, light, and medium) and present various combinations of factors the ALJ must consider in determining the availability of work that the claimant can perform.  See 20 C.F.R. pt. 404, subpt. P, App. 2; see generally Desrosiers v. Sec. of Health and Human Services, 846 F.2d 573, 577-78 (9th Cir. 1988).  The factors include the claimant's RFC, age, education, and work experience.  Id.  For each combination, the grids direct a finding of either "disabled" or "not disabled."  Id.

There are limits on using the grids: "the ALJ may apply [the grids] in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations."  Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983).  The ALJ may rely on the grids, however, even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations are not so significant as to impact the claimant's exertional capabilities.[4]  Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on other grounds, Bunnell v. Sullivan, 947 F.2d 341 (9th Cir. 1991) (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988); see also Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983) (requiring significant limitation on exertional capabilities in order to depart from the grids).  "[S]atisfaction of the step-two threshold requirement that a claimant prove her limitations are severe is not dispositive of the step-five determination of whether the non-exertional limitations are sufficiently severe such as to invalidate the ALJ's exclusive use of the grids without the

---

[4]     Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling.  20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).

     Nonexertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities.  20 C.F.R. § 416.969a(c)(2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1    assistance of a vocational expert."  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).  In

2    borderline cases, the ALJ must not apply the grids mechanically.  Jones, 760 F.2d at 998.

3            The ALJ found that given the plaintiff's age, education, and work experience, an RFC to

4    perform the full range of light work would require a finding of "not disabled" under Medical

5    Vocational Rule 202.17.  AT 23.  Using the guidance of SSR 85-15, the ALJ found that plaintiff's

6    non-exertional limitation to simple unskilled work involving no frequent public contact have little

7    or no effect on the occupational base of unskilled light work.  AT 22-23.  The ALJ then explained

8    that the term "moderate," which was utilized by SSA medical consultants, Drs. Becker and

9    Amado, is defined by the SSA as meaning "[t]here is more than a slight limitation in this area but

10   the individual is still able to function satisfactorily."  AT 23.  Lastly, the ALJ cited to the Ninth

11   Circuit's decision in Hoopai v. Astrue, noting that "mild or moderate mental limitations are not

12   sufficiently severe non-exertional limitations that significantly limit [an individual's] ability to

13   work beyond the [individual's] exertional limitations."  499 F.3d at 1071; AT 23.

14           Plaintiff argues that his non-exertional impairments were sufficiently severe to require the

15   testimony from a vocational expert.  ECF No. 17-1, 30-32.  This argument generally relies on

16   plaintiff's aforementioned interpretations of the medical opinions of Drs. Cormier and Amado.

17   As previously discussed, these opinions establish that plaintiff's non-exertional impairments are,

18   at most, moderately severe and the ALJ did not err in assessing these opinions or making his

19   mental RFC finding.  See supra, pp. 5-8.

20           Plaintiff also relies on the one-page form filled out by Dr. Blossom at the Tehama County

21   Department of Social Services on July 16, 2010, in which it is marked that plaintiff's anxiety,

22   depression, ADD, and PTSD prevents or substantially reduces his ability to engage in work,

23   training, and/or provide necessary care for his children on a full-time basis due to his lack of

24   focus or routine, constant pleasure seeking, and lack of responsibility.  ECF No. 17-1, 31; AT

25   322.  Although plaintiff did not address or take issue with the ALJ's assessment of this opinion in

26   arguing that the ALJ erred in making his mental RFC finding, plaintiff now seeks to use the

27   opinion to establish the severity of his non-exertional impairments.  AT 20-21.  As previously

28   discussed, the ALJ thoroughly addressed this opinion and assigned it minimal weight, stating that

14

1  the opinion was not supported by objective findings, it was based on inferences from plaintiff's

2  history, and a lack of focus or routine, constant pleasure seeking, and lack of responsibility would

3  not necessarily negate all ability to perform work activity.  Thus, this opinion does not support

4  plaintiff's argument that his non-exertional impairments are beyond moderate.

5        Finally, plaintiff argues that severe pain is considered a non-exertional impairment which

6  would require the use of vocational expert testimony.  ECF No. 17-2, 32, citing Penny v.

7  Sullivan, 2 F.3d 953 (9th Cir. 1993).  Plaintiff, for the first time, asserts that the record is replete

8  with evidence that he suffers from significant and severe pain in his back, knees, and abdomen

9  and that the ALJ erred by failing to include pain related limitations in the RFC finding.  Id.

10  However, plaintiff supports this assertion only by referencing the aforementioned opinions, which

11  have no mention of severe pain, and by stating that he has taken pain medications at various

12  times.  Also, Dr. Dossey's finding "that plaintiff has no physical functional limitations

13  whatsoever" strongly indicates that he does not suffer from severe pain in his back, knees, and

14  abdomen.  Again, there was no error in the ALJ's RFC finding, which was substantially

15  supported by evidence in the medical record.

16        Because substantial evidence in the record supports the ALJ's finding that the severity of

17  plaintiff's non-exertional impairments is not beyond moderate, there was no error in the ALJ's

18  failure to depart from the grids and obtain vocational expert testimony.

19  C.  Plaintiff Credibility

20        Plaintiff asserts that the ALJ erred in the evaluation of his credibility.  ECF No. 17-1 at

21  34-39.  The ALJ found that plaintiff's "statements concerning the intensity, persistence, and

22  limiting effects of [his] symptoms are not fully credible to the extent they are inconsistent with

23  the . . . residual functional capacity assessment."  AT 18.  Plaintiff contends that the ALJ failed to

24  provide specific, clear, and convincing reasons in finding that plaintiff's testimony was not fully

25  credible.  ECF No. 17-1, 36.

26        The ALJ determines whether a disability applicant is credible, and the court defers to the

27  ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

28  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

1    explicit credibility finding.  <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Rashad v.</u>

2    <u>Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

3    supported by "a specific, cogent reason for the disbelief").

4        In evaluating whether subjective complaints are credible, the ALJ should first consider

5    objective medical evidence and then consider other factors.  <u>Bunnell v. Sullivan</u>, 947 F.2d 341,

6    344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

7    then may consider the nature of the symptoms alleged, including aggravating factors, medication,

8    treatment and functional restrictions.  <u>See</u> <u>id.</u> at 345-47.  The ALJ also may consider: (1) the

9    applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

10   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

11   prescribed course of treatment, and (3) the applicant's daily activities.  <u>Smolen v. Chater</u>, 80 F.3d

12   1273, 1284 (9th Cir. 1996); <u>see generally</u> SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-

13   01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and

14   effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.

15   <u>Light v. Social Security Administration</u>, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek

16   treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ

17   in determining whether the alleged associated pain is not a significant nonexertional impairment.

18   <u>See</u> <u>Flaten v. Secretary of HHS</u>, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ may rely, in part,

19   on his or her own observations, <u>see</u> <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1458 (9th Cir.

20   1989), which cannot substitute for medical diagnosis.  <u>Marcia v. Sullivan</u>, 900 F.2d 172, 177 n.6

21   (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the

22   Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

23   <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999).

24        In finding plaintiff not fully credible, the ALJ noted that plaintiff testified that he: quit

25   work due to back problems and a hernia, which was later surgically repaired; walked for 20-30

26   minutes twice in 2 ½ months; has back and knee pain—knee pain caused because his meniscus is

27   gone; has stomach and sleep problems; has diverticulitis; has trouble breathing while he sleeps

28   and sometimes vomits while he sleeps; can walk for 15 minutes, stand for 5 minutes, sit for 10

1   minutes, and lift 10 pounds; has pain when he bends; does not get along with others; cannot stay

2   on task while working; and has severe depression.  AT 18.  The ALJ then stated that the record

3   shows difficulties with symptoms related to plaintiff's conditions and a history of treatment for

4   such, but that plaintiff is still able to move about in a satisfactorily manner.  The ALJ also noted

5   that there is no indication of muscle weakness or loss of control due to nerve damage.  Also, the

6   ALJ remarked on how the record does not reflect severe mental health issues, especially in light

7   of improvements while he is on a medication and treatment regimen and the fact that the record

8   indicates plaintiff made a poor effort and underperformed in his psychological testing.

9        The reasons set forth by the ALJ are clear, convincing, and supported by the record.  The

10   record indicates that plaintiff's physical and mental impairments are, at most, moderate in

11   severity.  Although objective findings of physical impairments in the record are sparse, no

12   medical opinion assigned physical restrictions on plaintiff's abilities to move that supported

13   plaintiff's testimony.  Also, plaintiff's mental impairments had shown improvement after the

14   recent placement of a medication regimen and other treatments.  Furthermore, plaintiff's

15   testimony concerning his knee and meniscus are clearly refuted by the x-ray and subsequent MRI

16   that showed no damage to or abnormalities with the knee, and it was noted that plaintiff was not

17   totally cooperative during his psychological testing.  These facts indicate that plaintiff may, to an

18   extent, be malingering.

19        Accordingly, the ALJ did not err in evaluating the credibility of plaintiff's subjective

20   complaints.

21   D.  Lay Witness Testimony

22        Plaintiff argues that the ALJ improperly failed to assess the third party statement

23   plaintiff's wife, Christina Whitfield.  ECF No. 17-1, 33-34.  "[L]ay witness testimony as to a

24   claimant's symptoms or how an impairment affects ability to work is competent evidence, and

25   therefore cannot be disregarded without comment."  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th

26   Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (friends and family

27   members in a position to observe a plaintiff's symptoms and daily activities are competent to

28   testify to condition).  "If the ALJ wishes to discount the testimony of the lay witnesses, he must

17

1  give reasons that are germane to each witness." <u>Dodrill</u>, 12 F.3d at 919; <u>see</u> <u>also</u> <u>Stout v.</u>

2  <u>Commissioner SSA</u>, 454 F.3d 1050, 1056 ((9th Cir. 2006) (where ALJ fails to properly discuss

3  competent lay testimony favorable to plaintiff, court cannot consider error to be harmless unless it

4  can confidently conclude no reasonable ALJ, when fully crediting testimony, could have reached

5  different disability determination).

6       Defendant conceded that the ALJ failed to address Ms. Whitfield's testimony, but argues

7  she that alleged similar restrictions as testified to by plaintiff and that the ALJ's reasons for

8  rejecting plaintiff's testimony are directly applicable to Ms. Whitfield's testimony.  ECF No. 18,

9  11-12.  Thus, defendant argues, any error was harmless.  In the context of Social Security appeals,

10  an ALJ is allowed inconsequential or harmless errors if they are immaterial to the ultimate

11  disability determination.  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1117 (9th Cir. 2012); <u>Tommasetti v.</u>

12  <u>Astrue</u>, 533 F.3d 1035, 1038 (9th Cir. 2008); <u>Stout v. Comm'r, Soc. Sec. Admin.</u>, 454 F.3d 1050,

13  1055 (9th Cir. 2006).

14       Ms. Whitfield's testimony primarily consists of a handwritten letter indicating that: she

15  has known plaintiff for five years and has been married to him for one year; plaintiff is unable to

16  do warehouse work because of back pain; plaintiff has problems helping around the house;

17  plaintiff can stand for 5-10 minutes at a time; plaintiff gets little sleep due to his sleep apnea, but

18  that he can't drive because he will fall asleep and he falls asleep 10 minutes after sitting down to

19  watch television; plaintiff takes various medications for mental and physical impairments;

20  plaintiff has memory loss so bad he forgets where he puts things the next day; and, plaintiff "is

21  unable to work at any type of job that he would go for."  AT 233-34.  Ms. Whitfield did not

22  directly testify during the hearing.  AT 31-62.  Instead, it seems that plaintiff and his wife carried

23  on a joint discussion with the ALJ in which she generally only confirmed or elaborated on details

24  regarding their living situation or his treatment information.  <u>Id.</u>

25       Due to the lack of information provided by Ms. Whitfield, defendant's argument that the

26  ALJ's error was harmless has merit.  Ms. Whitfield's letter does not provide details or examples

27  that are independent of plaintiff's testimony.  Rather, the information she provides is cumulative

28  and duplicative of plaintiff's testimony—it does not further evidence the severity of plaintiff's

1    impairments.  Thus, the ALJ's error in failing to directly discuss this testimony is immaterial to

2    the ultimate disability determination.  Had the ALJ discussed Ms. Whitfield's letter he surely

3    would have afforded it the same credibility that was given to plaintiff's testimony.

4         Because the ALJ's error was harmless, there is no need to remand this action for further

5    consideration on this issue.

6    CONCLUSION

7         For the reasons stated herein, IT IS HEREBY ORDERED that:

8         1.  Plaintiff's motion for summary judgment (ECF No. 17) is DENIED;

9         2.  The Commissioner's cross-motion for summary judgment (ECF No. 18) is

10   GRANTED; and,

11        3.  Judgment is entered for the Commissioner.

12   Dated:  March 7, 2014

13                                                _____
                                                  CAROLYN K. DELANEY
14                                                UNITED STATES MAGISTRATE JUDGE

15

16   33/4 whit1177.ss

17

18

19

20

21

22

23

24

25

26

27

28